Jonathan Hawk (SBN 254350)
jhawk@mwe.com
**McDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone:     1 310 277 4110
Facsimile:     1 310 277 4730

Attorneys for Respondent X CORP.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re *ex parte* Application of HateAid gGmbH, Josephine Ballon and Avital Grinberg,<br><br>Petitioners,<br><br>To Take Discovery Pursuant to 28 U.S.C. § 1782 in Aid of Foreign Litigants or Proceedings. | CASE NO.  3:23-mc-80235-HSG<br><br>**X CORP.'S OPPOSITION TO *EX PARTE* APPLICATION FOR ORDER ALLOWING DISCOVERY PURSUANT TO 28 U.S.C. § 1782 (ECF 1)** |

*McDermott Will & Emery LLP*
*Attorneys At Law*
*Los Angeles*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ...........................................................................................1

II.   FACTUAL BACKGROUND .......................................................................4

    A.   The German Litigation............................................................................4

    B.   The Proposed Document and Deposition Subpoenas to Non-Party X Corp. ....5

III.   ARGUMENT .............................................................................................8

    A.   The Application Does Not and Cannot Show the Proposed Discovery Would Be "For Use In" a Foreign Proceeding As Required Under § 1782 ................8

    B.   The Intel Factors Weigh In Favor of Denying The Application.....................11

        1.   The Application Fails To Show That The Materials Are Not Available in The Foreign Proceeding...................................................12

        2.   The Application Fails To Make Any Showing That The Berlin Court Would Be Receptive to the Proposed Discovery.................................13

        3.   The Application Is Seeking to Circumvent Foreign Proof-Gathering Restrictions Because It Is Premature .........................................14

        4.   The Proposed Document and Deposition Discovery Is Unduly Burdensome and Disproportionate .......................................15

            a.   The Proposed Discovery Is Irrelevant and Not Narrowly Tailored...........................................................16

            b.   The Proposed Discovery May Violate the Stored Communications Act ...............................................17

            c.   The Application Fails to Provide Information Sufficient to Enable X Corp. to Locate the Six Specific Posts....................18

IV.   CONCLUSION..........................................................................................18

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ex Parte Application of Nokia Corp.*,
   2013 WL 6073457 (N.D. Cal. Nov. 8, 2013) ............................................................16

*In re Ex Parte Application of Qualcomm Inc.*,
   162 F. Supp. 3d 1029 (N.D. Cal. 2016) ................................................2, 12, 15, 17

*In re Ex Parte Application of Samsung Elecs. Co., Ltd.*,
   2013 WL 12335833 (N.D. Cal. Jan. 23, 2013) ...................................................3, 13

*In re Ex Parte Application Varian Med. Sys. Int'l AG*,
   2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) ....................................................3, 12

*Baxalta Inc. v. Genentech, Inc.*,
   2016 WL 11529803 (N.D. Cal. Aug. 9, 2016) ........................................................14

*Bush v. Cardtronics Inc.*,
   2019 WL 1993792 (N.D. Cal. May 6, 2019) ...........................................................12

*Crispin v. Christian Audigier, Inc.*,
   717 F. Supp. 2d 965 (C.D. Cal. 2010) ....................................................................17

*In re Degitechnic*,
   2007 WL 1367697 (W.D. Wash. May 8, 2007) .......................................................12

*Doe v. Hyland Therapeutics Civ.*,
   807 F. Supp. 1117 ....................................................................................................15

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ........................................................................................ *passim*

*In re Isogai*,
   2023 WL 3035418 (N.D. Cal. Jan. 20, 2023) .....................................................3, 16

*Khrapunov v. Prosyankin*,
   931 F.3d 922 (9th Cir. 2019) ...............................................................................2, 9

*Knaggs v. Yahoo! Inc.*,
   2016 WL 3916350 (N.D. Cal. July 20, 2016) .....................................................3, 15

*In re Ex Parte LG Elecs. Deutschland GmbH*,
   2012 WL 1836283 (S.D. Cal. May 21, 2012) .....................................................2, 12

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
   2012 WL 4846522 (N.D. Cal. Aug. 7, 2012) ..........................................................15

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

*Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada,*
    384 F. Supp. 2d 45 (D.D.C. 2005) ....................................................................3, 14

*In re Oasis Focus Fund, L.P.,*
    2022 WL 17669119 ..............................................................................3, 9, 11, 15

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.,*
    634 F.3d 557 (9th Cir. 2011) ..........................................................................2, 15, 17

*In re Presidio, Inc.,*
    2020 WL 3574649 (N.D. Cal. July 1, 2020)............................................................12, 16

*Rainsy v. Facebook, Inc.,*
    311 F. Supp. 3d 1101 (N.D. Cal. 2018) ........................................................... *passim*

*Saleh v. Nike, Inc.,*
    562 F. Supp. 3d 503 (C.D. Cal. 2021) ..................................................................17

*Suraju v. Yahoo!, Inc.,*
    2022 WL 3365086 (N.D. Cal. July 13, 2022).................................................2, 8, 9

**Statutes**

28 U.S.C. § 1782................................................................................................ *passim*

Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 et seq.......................17, 18

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1

## I.    __INTRODUCTION__

2        Applicants'[1] lawsuit against Twitter International Unlimited Company ("TIUC") in Berlin,

3  Germany asserts a single claim for breach of contract, and presents two narrow, disputed issues for

4  resolution: (i) whether Applicants Ballon and Grinberg use the Twitter platform as "consumers"

5  under EU law such that German courts have jurisdiction over their claim; and (ii) whether TIUC

6  had a contractual obligation under the plain language of its terms and policies such that it was

7  required to remove six specific user-generated posts from the Twitter platform.  Declaration of

8  Markus Langen ("Langen Decl."), ¶¶ 2-17.

9        The Application (ECF 1) seeks permission from this Court to issue subpoenas under Federal

10  Rule of Civil Procedure 45 ("Rule") to non-party X Corp., under the auspices of Applicants

11  needing the discovery for use in the German litigation.  Exs. 1 and 2 to the Declaration of Josephine

12  Ballon ("Ballon Decl.") (ECF 1-2, 1-3).  But Applicants' proposed nine document requests and six

13  deposition topics would seek staggeringly-broad swaths of information, often prefaced with "all

14  documents concerning …," and ranging from "policies or procedures concerning the manner in

15  which the [Terms] are enforced," to "the methods of content moderation used by X Corp., Twitter

16  and/or TIUC," to "notification [] to any governmental authority anywhere of possible violations of

17  law" concerning the six posts at-issue.  *Id.*  The proposed requests are often not limited to a specific

18  time period, and seek information about extensive operational matters within X Corp. and TIUC

19  that have no bearing on the narrow issues in the "German Litigation."[2]  Moreover, Applicants have

20  made no efforts to invoke the procedures available to them under German law to seek any

21  discovery from TIUC (Langen Decl., ¶¶ 18-24), likely knowing the circumstances of their claim do

22  not warrant discovery.

23        The Application can be granted only if Applicants carry their burden to satisfy the three

24  statutory requirements under 28 U.S.C. § 1782, and the Court determines in its discretion that

25  discovery is appropriate under the non-exhaustive *Intel* factors set forth by the Supreme Court in

26

27  [1] "Applicants" shall mean, collectively, HateAid gGmbH, a non-profit organization, Josephine Ballon, and Avital Grinberg.

28  [2] "German Litigation" shall mean Applicants' case against TIUC that is pending in the Landgericht Berlin (Regional Court of Berlin, or the "Berlin Court"), with case number 27 O 52/23 (2).

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004); *Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1110 (N.D. Cal. 2018).  The Application does not and cannot carry that burden, nor do the discretionary *Intel* factors support allowing discovery under the circumstances here.

First, the Application does not and cannot establish the second requirement under § 1782 -- that "the discovery is for use in a proceeding in a foreign or international tribunal."  *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (quoting § 1782(a)).  This requires Applicants to show that the discovery sought is relevant to the claims and/or defenses in the foreign proceeding. *Suraju v. Yahoo!, Inc.*, 2022 WL 3365086, at *6 (N.D. Cal. July 13, 2022); *Rainsy*, 311 F. Supp. 3d at 1110.

The Application here fails to explain to the Court the elements of Applicants' claim in the German Litigation, what defenses TIUC is asserting, what issues are disputed, how Applicants would use the proposed discovery in the German Litigation, and why Applicants have not sought those materials from the Berlin Court.  The Application states in the most conclusory terms that the discovery sought is "highly relevant" to Applicants' claim, but that is insufficient and incorrect.

Applicants' breach of contract claim in the German Litigation and the parties' dispute regarding how Applicants use the Twitter service will be determined based on the plain language of the publicly-available terms and conditions, and other evidence already available to Applicants. There is no need for this discovery, and Applicants' requests constitute a transparent and impermissible fishing expedition.  *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1039 (N.D. Cal. 2016); *see In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011).  The Application should be denied on this basis alone.

Second, the *Intel* factors collectively weigh against allowing any of the discovery sought.

The first *Intel* factor assesses whether the discovery is obtainable in the German Litigation. Applicants have admittedly made no attempts to obtain the information they seek from TIUC or the Berlin Court, and incorrectly state that there is no mechanism under German law to seek those materials.  Langen Decl. ¶¶ 18-24.  Courts have found these circumstances weigh against granting discovery.  *In re Ex Parte LG Elecs. Deutschland GmbH*, 2012 WL 1836283, at *2 (S.D. Cal. May

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

21, 2012); *In re Ex Parte Application Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *3 (N.D. Cal. Mar. 24, 2016).

The third *Intel* factor assesses whether the Application is seeking to circumvent foreign proof gathering restrictions. TIUC raised a challenge to the jurisdiction of German courts to hear Applicants' claim in the German Litigation, and a hearing is scheduled for June 4, 2024, where the Berlin Court will likely assess the jurisdictional issues before reaching the merits. Langen Decl. ¶¶ 8-16. The Berlin Court may side with TIUC on this issue, particularly considering the number of German appellate court decisions issued in other cases involving TIUC that support its argument. *Id.* Applicants would then need to pursue their claim in Irish courts. This renders the Application premature, as the 28 U.S.C. § 1782 analysis would necessarily change to account for discovery mechanisms in the Irish court system. *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 54 (D.D.C. 2005) (application premature where motion to dismiss pending).

The fourth *Intel* factor assesses whether the discovery is unduly burdensome and intrusive. For reasons similar to those above, the broad categories of discovery sought are irrelevant (*Rainsy*, 311 F. Supp. 3d at 1111), not proportional to the needs of the case (*In re Oasis Focus Fund, L.P.*, 2022 WL 17669119 at * 13 ((S.D. Cal. Dec. 14, 2022)), and not narrowly tailored (*In re Isogai*, 2023 WL 3035418, at *4 (N.D. Cal. Jan. 20, 2023)). Courts have denied § 1782 applications on these grounds alone. *See Knaggs v. Yahoo! Inc.*, 2016 WL 3916350, at *6 (N.D. Cal. July 20, 2016).

The only *Intel* factor that does not weigh against discovery is the second factor. That factor is nonetheless neutral because Applicants have made no showing as to whether the Berlin Court would be receptive to the proposed discovery. *In re Ex Parte Application of Samsung Elecs. Co., Ltd.*, 2013 WL 12335833, at *3 (N.D. Cal. Jan. 23, 2013).

Applicants have not and cannot carry their burden to show the discovery they seek here is proper. For these reasons, as set forth more fully below, the Court should deny the Application.

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

- 3 -

## II.   **FACTUAL BACKGROUND**

### A.   **The German Litigation**

TIUC provides the Twitter platform to users living in the European Union, European Free Trade Association States, and the United Kingdom.  X Corp. provides the X platform to users living in the U.S. and all other countries where it is accessible.  This is clearly set forth in the Terms of Service (i.e., the "General Terms and Conditions," as referred to by Applicants), which are publicly available, including for users in the U.S. at https://twitter.com/en/tos.  *See also* Langen Decl., ¶ 28.

Applicants are a German non-profit organization and two German individuals.  Langen Decl., ¶ 3.  Their complaint in the German Litigation (the "German Complaint") asserts a single claim against TIUC for purported breach of contract under German law.  *Id.*, ¶¶ 4-7.  It alleges that Applicants are each registered users of the Twitter platform,[3] and, as registered users, agreed to TIUC's General Terms and Conditions (the "Terms") and Twitter Rules and Guidelines (the "Rules").  *Id.*, ¶ 5.  It alleges that the Terms and Rules, among other things, prohibit users from publishing certain types of content on the platform, and impose a contractual obligation on TIUC to remove such content if users do post the prohibited content.  *Id.*  X Corp. is not a party to the German Litigation.  *Id.*, ¶ 2.

The German Complaint alleges that Applicants located six specific user-generated posts on the Twitter platform that Applicants believe violated the Terms and Rules against illegal content, abusive content, and hateful content, as described in the Rules and Terms.  Langen Decl., ¶ 5.  The German Complaint alleges that Applicants reported that content to TIUC, but that TIUC failed to remove it pursuant to its purported contractual obligation by the time Applicants filed the German Complaint.  *Id.*  The German Complaint seeks an order from the Berlin Court that would enjoin TIUC from disseminating the six specific user-generated posts in the German territory and would require TIUC to pay Applicants' costs of suit under German law.  *Id.*, ¶ 6.

To prove their claim under German law, Applicants must show that: (i) they and TIUC are parties to the Terms and Rules; (ii) the plain language of the Terms and Rules impose a contractual

---

[3] The platform is known as Twitter in the, among other places Germany, but is known in the United States as the X platform and is provided by X Corp.

- 4 -

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1  obligation on TIUC to remove violating content; (iii) TIUC did not comply with that alleged

2  contractual obligation; and (iv) Applicants suffered harm as a result.  Langen Decl., ¶ 7.

3      TIUC timely responded to Applicants' German Complaint on August 23, 2023, filing a 118-

4  paragraph Statement of Defense (the "SoD").  Langen Decl., ¶ 8.  TIUC's SoD asserts numerous

5  procedural and merits-based defenses.  *Id.*, ¶¶ 8-13.  Importantly, it asserts that German courts lack

6  jurisdiction over Applicants' claim pursuant to the governing EU Regulation and numerous German

7  appellate court decisions issued in other cases involving TIUC, which require Applicants -- as non-

8  "consumers" under EU law -- to bring their claim exclusively in Ireland where TIUC is headquartered

9  and carried out its contractual obligations.  *Id.*, ¶¶ 8-11.  TIUC's SoD also asserts that the plain

10  language of the Terms and Rules do not impose any contractual obligation on TIUC to remove

11  violating content, and, in any event, by the time TIUC filed its SoD, it had removed access to the six

12  specific user-generated posts for users in Germany.  *Id.*, ¶¶ 12-13.

13      Applicants filed a response to TIUC's SoD on October 23, 2023.  Langen Decl., ¶ 14.  The

14  response does not dispute that Applicant HateAid must bring its claim in Ireland.  *Id.*  It nonetheless

15  argues that the two individual Applicants can bring their breach of contract claim in Germany because

16  they are "consumers," using the Twitter service for personal reasons, and live in Berlin.  *Id.*  The

17  response further acknowledges that Applicants' breach of contract claim hinges on their

18  interpretation of the plain language of the Terms and Rules, which are and, at all relevant times have

19  been, publicly available, and acknowledges that the six posts at-issue were removed since they filed

20  the German Complaint.  *Id.*, ¶¶ 15, 17.

21      The Berlin Court has scheduled a hearing for June 4, 2024.  Langen Decl., ¶ 16.  TIUC

22  anticipates the Berlin Court will resolve the jurisdictional issue before addressing the merits.  *Id.*  If

23  the Berlin Court agrees with TIUC that German courts lack jurisdiction, then Applicants, subject to

24  the outcome of any appeal, will not be able to refile their complaint in any German court, and must

25  re-file their complaint in Irish courts if they wish to proceed with their claim.  *Id.*

26  **B.     The Proposed Document and Deposition Subpoenas to Non-Party X Corp.**

27      The Application seeks an order from the Court that would permit Applicants to issue wide-

28

- 5 -

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

ranging document and deposition subpoenas under Rule 45 to X Corp., as the parent company of TIUC.  App. (ECF 1).

The Application argues that the proposed discovery is relevant to Applicants' claims in the German Litigation, and makes conclusory assertions that, among other things, Applicants "enjoy no insight into the work processes of Twitter or X Corp. [making] it very difficult for them to prove how TIUC or Twitter reacted internally to the reported content, to what process the Offending Tweets were subjected, and what steps if any were taken."  Ballon Decl., ¶ 25 (ECF 1-1).  The Application also asserts that the discovery sought from X Corp. is "highly relevant to [Applicants'] claims" in the German Litigation (App. at 5).

The Application, however, fails to specify what Applicants must prove to establish their claim and overcome TIUC's defenses under German law, and fails to explain what nexus may exist (if any) between the elements of those claims and defenses, on the one hand, and the proposed discovery, on the other.

The Application proposes document requests to be issued to non-party X Corp. pursuant to a subpoena under Rule 45.  All of the proposed document requests would seek information far beyond the scope of what is at-issue in the German Litigation, including, for example, all documents "constituting or reflecting policies or procedures concerning" how the Terms are enforced:

> 2.   Policy and Procedure Materials: All documents constituting or reflecting policies or procedures concerning the manner in which the ToS are enforced, including all company manuals (or sections of such company manuals) concerning the manner in which the ToS are implemented and enforced, including all instructional materials, protocols, memoranda concerning management of such issues, and all other documents specifically addressed to the implementation of those aspects of the ToS addressing abusive, hateful, and/or other conduct violative of the policies at issue in the German Action.

Ex. 1 to Ballon Decl., at 2 (ECF 1-2).  The proposed document requests would also seek:

> 3.   Content Moderation Instructions: To the extent considered outside the scope of Request 2 above, (a) all documents concerning instructions for personnel involved in content moderation, and (b) documents sufficient to understand the programming of any automated,

- 6 -

computerized or computer-aided content moderation process in place at TIUC and X Corp. between the time of the offending Tweets and the date of compliance with this subpoena.

*Id.* These are just two examples of Applicants' nine document requests, all of which are similarly overbroad. Some of the Application's proposed requests even seek discovery into the operations of the X platform by X Corp. (*id.*), despite Applicants making no showing that X Corp.'s operations are relevant to their claim in the German Litigation or as to whether the Terms and Rules that the Applicants agreed to with TIUC are the same as the versions of the Terms and Rules that users of the X platform may agree to with X Corp. Indeed, TIUC provides the Twitter platform to users living in Germany, including Applicants. Langen Decl., ¶ 28.

The Application's proposed deposition subpoena would likewise seek testimony from X Corp. on topics that are all far-flung, e.g., "(1) the policies and procedures relating to the Terms of Service and any related policies or guidelines relating or applicable to hateful, abusive, racist and/or antisemetic [sic] conduct on the Twitter platform; … [and] (3) the methods of content moderation used by X Corp., Twitter and/or TIUC; …" Ex. 2 to Ballon Decl., at 5 (ECF 1-3).

And while it is true that parties to litigation in Germany do not have the same discovery mechanisms available to parties in US litigation, the Application makes the incorrect assertion that "a German court cannot compel TIUC to produce" documents that are "directly relevant to the claims asserted by the applicants." Ballon Decl., ¶ 27; Langen Decl., ¶¶ 18-25. The Application fails to disclose that Applicants could, under German law, permissibly request that the Berlin Court order TIUC to produce any specific document that TIUC proffered in support of the disputed factual assertions or defenses in its SoD and did not produce with its SoD, *if* any such document exists. *Id.* Of course, there is no such document proffered in TIUC's SoD because the only materials relevant to the dispute are, and have been, publicly available, including to the Applicants -- i.e., the Terms and Rules, and the six posts that Applicants have acknowledged are inaccessible. *Id.*, at ¶¶ 18-25, 27-29.

The Application also fails to specify URLs or usernames (i.e., @username) that would enable

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

X Corp. to identify the six specific pieces of content at-issue.[4]  Ballon Decl., ¶ 19; Declaration of Marcella Barreto ("Barreto Decl."), ¶¶ 2-5.

## III.   **ARGUMENT**

The Application seeks to abuse 28 U.S.C. § 1782 and should be denied for several reasons. First, the Application has failed to show the discovery sought would be "for use in" a foreign proceeding under the second statutory requirement of § 1782.  The Application fails to carry its burden to show that the proposed discovery is relevant to the claim or defenses in the German Litigation, and should be denied on this basis alone.  *Suraju*, 2022 WL 3365086, at *6; *Rainsy*, 311 F. Supp. 3d at 1111.

Second, and even if the Application had satisfied all three of the statutory requirements under § 1782 (which it has not), the *Intel* factors collectively weigh in favor of denying the Application. Among other reasons, the Application has failed to show that Applicants cannot obtain the discovery they seek from the Berlin Court and the proposed document requests and deposition topics are fatally overbroad and unduly burdensome.

### A.   **The Application Does Not and Cannot Show the Proposed Discovery Would Be "For Use In" a Foreign Proceeding As Required Under § 1782**

Section 1782 provides that a district court may order discovery for use in a foreign tribunal. 28 U.S.C. § 1782; *Intel Corp.*, 542 U.S. at 241.  The applicant must first, however, carry its burden to meet three statutory requirements and the discovery must otherwise be in accordance with the Federal Rules of Civil Procedure and not violate a legal privilege.  28 U.S.C. § 1782(a).

28 U.S.C. § 1782 provides, in relevant part, that:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal....The order may be made ... upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced....

---

[4] The Application provides only the display names of the accounts that purportedly disseminated the six specific posts at-issue (e.g., "Indeara") and quotes and date stamps for the content.  Ballon Decl., ¶ 19. As explained below, X Corp.'s internal tools cannot search for and locate content using display names.

- 8 -

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

This "has been distilled to permit district courts to authorize discovery where" all three of the following requirements are satisfied: "(1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov*, 931 F.3d at 925.

To satisfy the second statutory requirement -- i.e., for discovery to be "for use in" a foreign proceeding -- the information sought must be relevant to the claims and/or defenses in that foreign proceeding. *Suraju*, 2022 WL 3365086, at *6; *Rainsy*, 311 F. Supp. 3d at 1110. If the information sought does not bear on those claims or defenses, or has marginal relevance, the second statutory requirement under § 1782 has not been satisfied and the application should be denied. *Rainsy*, 311 F. Supp. 3d at 1111. Put another way, "[t]he requested discovery must be proportional to the needs of the case, including the importance of the discovery in resolving the issues." *In re Oasis Focus Fund, L.P.*, 2022 WL 17669119 at * 13 (denying § 1782 application because discovery sought was irrelevant, including because applicants failed to explain how they would use the discovery being sought; it was thus not "for use in" a foreign proceeding).

*Rainsy* is illustrative. There, the applicant was a Cambodian national, living in exile in France, who faced civil and criminal charges of defamation and incitement in Cambodia brought by the Cambodian Prime Minister (and ex-commander of the Khmer Rouge), Hun Sen, and his purported proxies. *Rainsy*, 311 F. Supp. 3d at 1108-1109. One of the defamation cases against Rainsy alleged that he defamed the Cambodian Prime Minister by publishing a post on Facebook that claimed "likes" of the Prime Minister's content on Facebook were generated by "click-farms," and were not authentic. *Id.* at 1108. The applicant sought, among other things, documents regarding "general information about Facebook's investigations of and communications with [the Prime Minister] on any topic, which might include the false use of 'likes.'" *Id.* at 1111.

The *Rainsy* court found that those requests "are not relevant" to the defamation case as they went far beyond the issue of whether the specific "likes" were falsely generated, and were thus not sought "for use in" a foreign proceeding under § 1782. *Rainsy*, 311 F. Supp. 3d at 1111.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

The *Rainsy* court likewise found that many other of the applicant's requests for documents and deposition testimony were "not related to the issues in any of the four Cambodian cases." *Rainsy*, 311 F. Supp. 3d at 1111.  Those requests for documents and deposition testimony included, for example, information regarding communications between the Prime Minister and others discussing the four Cambodian cases, and "Facebook's historical processes for preventing false or deceptive news and threatening or harassing statements." *Id.*  The requests also sought Facebook's:

> response or enforcement of policies against Hun Sen's Facebook page, complaints and investigations regarding "findings regarding" Hun Sen's Facebook page, communications with Hun Sen, policies and procedures regarding threats or harassment on Facebook, Hun Sen's attempts to disseminate false news or make threats, any communications between Facebook and Hun Sen, funds spent by Hun Sen on Facebook advertising, any negotiations or agreements between Facebook and Hun Sen and the government of Cambodia, Facebook's review of documents, and authentication of any document produced in response to the Application

*Id.*

The court found that these requests were not "for use in" the Cambodian cases under § 1782 because "[t]here is no time limitation on these subjects," and "[n]one of these categories of information in the request for document or deposition topics has any bearing on the four actions in Cambodia." *Rainsy*, 311 F. Supp. 3d at 1111.  The same conclusion should be reached here.

The Application's proposed document requests do not bear on the narrow, disputed issues in the German Litigation.  The Application's proposed document requests seek information regarding: how the Terms, Rules, and any other policies may have been applied to the six posts at-issue; a staggering breadth of internal company documents including "instructional materials, protocols, [and] memoranda concerning management of" how the Terms and Rules and applied; how content personnel and automated processes are instructed and involved in content moderation decisions; who was involved in assessing whether the six posts violated the Terms and Rules; any internal investigations into the six posts and any notifications to any governmental authorities "anywhere" of the posts;  how the Terms and Rules may be applied to Retweets of the posts; and, the number and locations of impressions of the six posts and any Retweets or re-posts of that content.  Ex. 1 to Ballon

- 10 -

Decl., at 5-6.  Many of the requests even expressly ask for documents relevant to the operation of the X platform, and are not limited in time or to the Twitter platform operated by TIUC for users living in Germany.  *Id.*

The proposed deposition topics likewise would seek testimony on: policies and procedures generally related to hateful, abusive, racist and/or antisemitic content on "X or the Twitter platform;" how the policies and enforced; X Corp.'s and TIUC's "methods of content moderation;" application of the policies to the six posts; the number and location of impressions of the six posts; and, authenticity of documents that may be produced by X Corp.  Ex. 2 to Ballon Decl., at 5.

The Application does not even try to make a showing of relevance, or establish a nexus between the information sought and the claims and defenses at-issue in the German Litigation.  Nor does the Application explain how Applicants may validly use the proposed discovery in the German Litigation.  *See*, *e.g.*, *In re Oasis Focus Fund, L.P.*, 2022 WL 17669119 at * 7.  The Application does not attempt to make these showings because it cannot -- none of the discovery sought is relevant to Applicants' claim or TIUC's defenses in the German Litigation because it does not bear on: (i) whether the individual Applicants use the Twitter service as "consumers;" or (ii) what the plain language of the Terms and Rules say.

For these reasons, the Application does not and cannot satisfy the second requirement under 28 U.S.C. § 1782, i.e., to show the discovery would be "for use in" a foreign proceeding, and should be denied on this basis alone.

### B.      The *Intel* Factors Weigh In Favor of Denying The Application

Even if an applicant satisfies all three statutory requirements under § 1782, a court "retains wide discretion to grant or deny discovery."  *Rainsy*, 311 F. Supp. 3d at 1111 (citing *Intel Corp.*, 542 U.S. at 260-61)).  The Supreme Court has identified several, non-exhaustive factors for consideration, i.e., the *Intel* factors:

> (1) whether the person from whom the discovery is sought is a participant in   the foreign proceeding;
>
> (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or court or agency to U.S. federal court judicial assistance;

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

(3) whether the discovery request is a concealed attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the U.S.; and

(4) whether the discovery is unduly intrusive or burdensome.

*In re Presidio, Inc.*, 2020 WL 3574649, at *1 (N.D. Cal. July 1, 2020) (citing *Intel Corp.*, 542 at 264–65); *Bush v. Cardtronics Inc.*, 2019 WL 1993792, at *1 (N.D. Cal. May 6, 2019).

Here, even if the Court were to conclude that the Application satisfies all three statutory requirements under § 1782 (which it has not), the Court should exercise discretion to deny the Application because the *Intel* factors weigh in favor of denying the Application.

### 1. The Application Fails To Show That The Materials Are Not Available in The Foreign Proceeding

The first *Intel* factor assesses whether the person from whom the discovery is sought is a participant in the foreign proceeding.  This factor weighs in X Corp.'s favor and against discovery.

"Although the case law at times refers to whether the person is within the foreign tribunal's jurisdictional reach, the key issue is whether the material is obtainable through the foreign proceeding." *Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *3; *see Qualcomm Inc.*, 162 F. Supp. 3d at 1039 (courts should "focus on whether the evidence is available to the foreign tribunal, because in some circumstances, evidence may be available to a foreign tribunal even if it is held by a non-participant to the tribunal's proceedings").

In analyzing this issue, and despite § 1782 not having an exhaustion requirement, a court is permitted to consider whether the applicant has availed itself of discovery procedures in the foreign forum.  *LG Elecs. Deutschland GmbH*, 2012 WL 1836283, at *2.  Courts have denied § 1782 applications where applicants failed to attempt to seek the requested discovery through a German court (*LG Elecs. Deutschland GmbH*, 2012 WL 1836283, at *2), and failed to make clear whether the German court could in fact order the discovery being sought under § 1782 (*Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *3).

Here, the Application admits that Applicants have not undertaken *any* efforts to obtain the

- 12 -

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

requested information directly from TIUC or via the Berlin Court.  The Application attempts to justify this by claiming "there are no comparable discovery procedures" in Germany."  The Application, however, has "not pointed to any such particular restrictions anywhere in [German law]" (*In re Degitechnic*, 2007 WL 1367697, at *4 (W.D. Wash. May 8, 2007)), and incorrectly states that "a German court cannot compel TIUC to produce" documents relevant to Applicants' claim or TIUC's defenses.  Ballon Decl., ¶ 27; Langen Decl., ¶¶ 18-25.

German law *does* provide a mechanism to seek a court order that would require the production of specific materials.  Langen Decl., ¶¶ 18-25.  That mechanism for seeking discovery is available if the pleadings reveal a disputed issue of fact that will be material to resolution of the case, and the party making the disputed assertion has failed to provide the document(s) supporting its position.  *Id.*.

There are, however, no disputed issues of fact that are material to resolution of the German Litigation, where TIUC has relied on but failed to produce non-public documents.  Langen Decl., ¶¶ 18-29.  Applicants have made no argument in the German Litigation that TIUC has failed to produce such documents.  *Id.*  It is now inconsistent and improper under these circumstances for Applicants to approach this Court with their Application, and make conclusory statements about broad swaths of materials being potentially relevant to the German Litigation.

Applicants likely have not approached the Berlin Court to seek any of the discovery materials they seek via the Application because Applicants know that the German court, under these circumstances, would reject such a request as seeking irrelevant information.  That, in turn, would undermine Applicants' ability to argue to this Court that they are not seeking to circumvent foreign proof-gathering restrictions in the German court system (*see* Sec. III.B.3, *infra*).

This factor weighs in favor of denying the Application.

### 2. The Application Fails To Make Any Showing That The Berlin Court Would Be Receptive to the Proposed Discovery

The second *Intel* factor assesses, among other things, whether the foreign tribunal would be receptive to judicial assistance from a U.S. federal court.  This factor is neutral where, as here, there is no evidence provided by either party that the German court would not be receptive to the proposed

- 13 -

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

discovery.  *Samsung Elecs. Co., Ltd.*, 2013 WL 12335833, at *3 (holding the second factor is neutral where "[Applicant] has not provided … evidence that the [foreign] court would be receptive to the evidence requested for this case" and "[Respondent] has not provided evidence that the [foreign] court would not be receptive to the discovery").

### 3.    The Application Is Seeking to Circumvent Foreign Proof-Gathering Restrictions Because It Is Premature

The third *Intel* factor assesses whether the discovery request is a concealed attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the U.S. This factor favors denying the Application under the circumstances here.

"The third *Intel* factor allows courts to consider veiled attempts to circumvent foreign or domestic policy or proof-gathering restrictions." *Baxalta Inc. v. Genentech, Inc.*, 2016 WL 11529803, at *6 (N.D. Cal. Aug. 9, 2016).  Under this factor, courts may "consider the timing" of an applicant's request for discovery.  *Id.* at *7.  For example, courts are hesitant to grant "discovery under § 1782 when it appears that the party seeking discovery may be using the United States statutes and federal court system to 'jump the gun' on discovery in the underlying foreign suit." *Norex Petroleum Ltd.*, 384 F. Supp. 2d at 54.

Discovery is not appropriate given the procedural posture of the German Litigation, where TIUC has a pending jurisdictional challenge that may be resolved with the case being dismissed before the merits are addressed.  *See id.* (noting foreign discovery may not be appropriate while there is a pending motion to dismiss).  TIUC's SoD explains that Applicants lack standing to bring their claims in Germany for several reasons, including: (i) the governing EU Regulation generally requires a lawsuit such as the German Litigation to be brought where the defendant is headquartered, i.e., Ireland; (ii) Applicants do not qualify for any exception to that rule because none of the Applicants are "consumers" under the relevant EU Regulation; and (iii) there is significant case law from German appellate courts, including as recently as March 24, 2023 in cases involving TIUC, that support TIUC's jurisdiction argument in the German Litigation. Langen Decl., ¶¶ 9-10.

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

Applicants' October 23, 2023 response to the SoD does not dispute the SoD's showing as to Applicant Hate Aid.  Langen Decl., ¶ 14.  And while Applicants' October 23, 2023 response disputes the SoD's showings as to the two individual Applicants, a hearing is set for June 4, 2024, where TIUC expects the Berlin Court will address the jurisdiction issue before assessing the merits, and may dismiss Applicants' claim on jurisdictional grounds.  *Id.*, ¶¶ 14-16.

If the Berlin Court dismisses Applicants' claim on jurisdictional grounds, there will be no foreign proceeding, and the entire analysis under § 1782's statutory requirements and the *Intel* factors would change if Applicants bring a proceeding in Ireland, which provides its own discovery procedures and mechanisms.  *See generally*, *Doe v. Hyland Therapeutics Civ.*, 807 F. Supp. 1117, 1124 (generally acknowledging the existence of Irish discovery procedures).

This factor also weighs in favor of denying the Application, as the Application is premature.

### 4.      The Proposed Document and Deposition Discovery Is Unduly Burdensome and Disproportionate

The fourth *Intel* factor assesses the relevance and scope of the discovery being sought, and encourages district courts to reject "unduly intrusive or burdensome requests."  *Intel Corp.*, 542 U.S. at 265.  "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information."  *Qualcomm Inc.*, 162 F. Supp. 3d at 1043; *Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d at 563.

Additionally, "the proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure."  *In re Oasis Focus Fund, L.P.*, 2022 WL 17669119 at * 13 (collecting cases).  As explained above, this means the applicant "must show that the discovery is relevant to the claims and defenses in the foreign tribunal," and proportional to the needs of the case.  *Id.*  This should also include recognition that, because the proposed subpoenas would be issued under Rule 45, there is a "mandatory responsibility … to protect nonparties from unduly burdensome discovery."  *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 4846522, at *2 (N.D. Cal. Aug. 7, 2012) (generally recognizing need to protect non-parties from

- 15 -

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

overbroad and unduly burdensome discovery, outside of the § 1782 context).

Recognizing the broad discretion granted to them, courts applying these principles have not hesitated to deny unduly intrusive and burdensome § 1782 applications on these grounds alone.  *See Knaggs*, 2016 WL 3916350, at *6 ("court may deny overly broad and unduly burdensome discovery requests even though the Section 1782 application meets the other statutory requirements and discretionary factors").  That should be the result here.

### a.      The Proposed Discovery Is Irrelevant and Not Narrowly Tailored

For the same reasons that the Application fails to satisfy the second statutory requirement under § 1782 -- i.e., the discovery sought is irrelevant to the German Litigation (*see* Sec. III.A., *supra*, at 10-11]), the Court should hold the fourth *Intel* factor weighs in favor of denying Applicants' Application. The proposed discovery is far overbroad and has no bearing on the claims and defenses in the German Litigation, and X Corp. incorporates by reference herein its discussion from Sec. III.A., *supra*.

Even if the proposed discovery requests did potentially seek some relevant information (which they do not), the proposed document and deposition requests are not narrowly tailored in their subject matter or with respect to a time period.  *In re Isogai*, 2023 WL 3035418, at *4 (by "seeking 'ALL DOCUMENTS' the subpoena is unduly burdensome"); *In re Presidio,* 2020 WL 3574649 at *2 ("requests are overly burdensome because they are overbroad").  The discovery requests go well beyond TIUC's alleged obligations under the Terms and the Rules, and seek to delve into not only broad content-moderation policies and practices, but also potential processes for reporting content to government authorities, and even X Corp.'s practices with respect to the X platform, which is not offered in Germany.  Langen Decl., ¶ 28.  Many of the proposed discovery requests also fail to specify any time frame and, even if they do, encompass a period of one year or more.

Perhaps anticipating that its proposed discovery requests will be deemed overbroad and unduly burdensome, the Application states that Applicants are "ready to negotiate ... to alleviate any genuinely undue burdens that may be imposed by the requests."  App. at 9.  That is insufficient to

- 16 -

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

save the Application.  Applicants have the "burden to come to the court with narrowly-tailored request[s] in the first instance."  *In re Ex Parte Application of Nokia Corp.*, 2013 WL 6073457, at *3 (N.D. Cal. Nov. 8, 2013) ("While [applicant] suggests that any undue burden can be mitigated in meet-and-confer, or addressed in a motion to quash, [applicant]'s position overlooks its burden to come to the court with narrowly-tailored request in the first instance. It is no substitute to kick the can down the road").

This is also not a circumstance where the proposed discovery requests are somewhat closely tailored to the issues in the German Litigation, such that Applicants could claim their poor drafting resulted from their lack of familiarity with the materials being sought.  Rather, it appears the Application has provided to the Court only a high level and incomplete picture of some issues in the German Litigation, omitted many relevant details including the bases on which TIUC is defending itself per the SoD, incorrectly characterizes discovery mechanisms that are available under German law, and is racing to seek approval from this Court to conduct a fishing expedition for broad swaths of irrelevant information on sensitive topics about X Corp.'s and TIUC's internal operations, before the Berlin Court can rule on jurisdiction.  *Qualcomm Inc.*, 162 F. Supp. 3d at 1043; *Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d at 563.  That is improper, and the Application should be denied.

### b.    The Proposed Discovery May Violate the Stored Communications Act

Many of the proposed requests may seek content in violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 et seq., including the Stored Communications Act, 18 U.S.C. §§ 2701 et seq. ("SCA"), further making the discovery improper.

Proposed document request nos. 8 and 9, for example, are so overbroad that they could be read to seek the content of a user's electronic communications, such as messages, posts, comments, photos, or videos.  Those requests would seek, respectively, documents "sufficient to determine whether and how TIUC and/or X Corp. applied the ToS to retweets or repostings" and information regarding the location of impressions.  See Ballon Decl., ¶ 28.  Those requests may sweep in the

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

contents such as posts, direct messages, and other materials that courts in this district have found to be the "contents of communications" that the SCA prohibits X Corp. from producing under these circumstances. *See*, *e.g.*, *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 972-73 (C.D. Cal. 2010); *see also Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021) ("contents of communications" under the SCA includes "mouse movements, clicks, typing, scrolling, swiping, tapping, keystrokes, geographic location, IP addresses, and data entry").

The concern applies to several of the other proposed discovery requests given their breadth (e.g., document request nos. 1, 6, and 7), providing another independent reason to deny the Application.

### c.    The Application Fails to Provide Information Sufficient to Enable X Corp. to Locate the Six Specific Posts

Even if the Application's proposed discovery requests were properly limited to the six posts at-issue, the Application has provided insufficient information to enable X Corp. to identify that content, thus creating yet another undue burden on X Corp.  Barreto Decl., ¶¶ 2-5.  The Application provides display names.  *Id.*  Display names are not unique or the true names of users, and X Corp. cannot search them via its internal tools.  Id.  X Corp. requires a username (i.e., @username) or URL to locate an account or specific content.  *Id.*   This is another independent reason to deny the Application.

The Application's proposed discovery requests are inappropriate.  This fourth factor, as well as the totality of the *Intel* factors, weigh in favor of denying the Application.

## IV.    **CONCLUSION**

For the foregoing reasons, X Corp. respectfully requests that this Court deny Applicants' Application in its entirety.

Dated: November 27, 2023          Respectfully submitted,

**McDERMOTT WILL & EMERY LLP**

*/s/ Jonathan Hawk*
JONATHAN HAWK
Attorneys Respondent X CORP.

- 18 -